[No. 25722-6-I.   Division One.   March 9, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES DAVID
NEWKIRK, *Appellant*.

*Irene Tanabe* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Michael Shaw, Deputy*, for respondent.

SCHOLFIELD, J. — James Newkirk appeals his conviction for robbery in the second degree. We reverse and dismiss.

FACTS

On December 8, 1988, Newkirk was charged by information with robbery in the second degree for taking a wallet and money from Mark Sandberg.

Officer Gerald Holley testified that on the night of December 5, 1988, he and his patrol partner were driving very

slowly eastbound on Pike Street between First and Second Avenues. The officers observed a man run westbound on the sidewalk and dart into an alley going northbound. The officers followed the man into the alley, and saw him run into a parking lot and duck behind a parked car.

After Holley stopped the patrol car he heard something drop, as if the man had thrown something down. The individual, later identified as Newkirk, was detained, and Holley retrieved a gray wallet that was lying next to Newkirk. Holley examined the wallet and found picture identification in the name of Mark Sandberg. The picture did not match Newkirk's appearance. The wallet also contained some credit cards, bank deposit slips, and money. Holley patted Newkirk down for weapons and discovered a bank deposit slip in the name of Mark Sandberg on Newkirk's person.

Officer Stephen Piccirillo, Holley's partner, testified that just then Mark Sandberg came up to the officers and stated, " 'I have been robbed and that's the man that robbed me' ", pointing to Newkirk. According to Holley, Sandberg had been running and was out of breath, and he appeared excited and agitated.

Newkirk was arrested on a charge of second degree robbery, and was immediately transported to the police precinct. Sandberg accompanied the officers to give a statement. The statement was taken approximately 15 minutes after Sandberg first approached the officers.

Sandberg died prior to the commencement of this trial, from causes unrelated to the crime at issue here.[1] Therefore, the State sought to admit all of Sandberg's statements to the officers, including the statement taken at the police precinct, under the excited utterance exception to the hearsay rule. The trial court granted the State's motion to admit Sandberg's statements to the police, with one limitation. The officers were permitted to testify to Sandberg's oral state-

---

[1]Mention was made at trial that Sandberg suffered from multiple sclerosis. However, his death certificate, which was introduced at trial, indicated aspiration while in a diabetic coma.

ments at the scene, and his initial oral narrative at the time of the police precinct interview. However, Officer Holley could not testify to any statements made by Sandberg once he began to prepare a written statement for Sandberg to sign.

Holley testified that at the time of the interview, Sandberg was still somewhat excited, a little nervous, and fairly shocked and surprised that he could have been robbed. Sandberg told Holley that he first came in contact with Newkirk earlier that evening in a little deli on Pike Street in the block between First and Second.

Subsequently, Sandberg walked next door to the Adult Entertainment Center, located on the second floor. Sandberg stated that he got halfway up the stairs when he felt his wallet being taken from his pocket. Sandberg turned around before the wallet was out of his pocket, and was confronted by Newkirk. Newkirk wanted Sandberg to give him a dollar, but Sandberg responded that he had no money. Newkirk indicated that he knew that Sandberg had money, and he (Newkirk) wanted it.

Sandberg took out the wallet to give Newkirk a dollar to get away from him. Newkirk shook his fist at Sandberg, and because Sandberg did not want any kind of physical confrontation, he let Newkirk grab the wallet, and Newkirk ran away.

Newkirk testified in his own behalf. He testified that he had been drinking in Auburn on the night of December 5, 1988, and came to Seattle on the bus. He got off the bus in the area of Pike Street and First Avenue, and someone sold him (bogus) cocaine. Newkirk then realized that he did not have any more money.

Newkirk testified that he followed Sandberg up the steps to the Adult Entertainment Center to ask him for money. Newkirk grabbed Sandberg's pocket to get him to stop. According to Newkirk, he asked Sandberg for a dollar, and Sandberg gave him one, then Newkirk asked for another dollar, which Sandberg gave him. At that point, Newkirk just took the wallet and ran. Newkirk testified that he

made no verbal or physical threats to Sandberg, at least none he could remember. However, Newkirk indicated that he had consumed at least 10 drinks in a very short period of time, and could not remember much of what he said. He indicated that he had felt embarrassed and stupid about what he had done.

Newkirk failed to appear for trial on May 4, 1989, apparently because he had car trouble. A warrant was issued for his arrest. The warrant was quashed on May 5, 1989. According to defense counsel at trial, Newkirk was present at the time the warrant was quashed. However, the transcript of that motion hearing does not mention his presence:

> THE COURT: Motion to Quash a Bench Warrant.
>
> DEFENSE ATTORNEY: That's correct, your Honor. Mr. Newkirk was on the trial calendar yesterday. He did not appear in the morning. It was held until 1:15. He apparently was on his way here at that point and his car broke down and he could not get here. He did call the courtroom yesterday to let people know.
>
> We'd ask that the Order Quashing the Bench Warrant on that be stricken. I guess I should step back in the office and get a new trial date.
>
> THE COURT: Hand it up. I'll sign it.
>
> DEFENSE ATTORNEY: Thank you.

According to defense counsel, there was a hearing regarding bail bond forfeiture on May 18, 1989, and on May 26, 1989, Newkirk came to court for an omnibus hearing, but the case was not on the calendar. On August 31, 1989, defense counsel filed a motion to dismiss, arguing that the 90 days for purposes of speedy trial had expired on August 4, 1989.

However, the trial court denied the defense motion to dismiss on the basis that CrR 3.3 requires that the defendant's presence be made known to the court on the record. According to the trial court, this means there must be some objective evidence, such as a minute entry, a transcript, or something in a written order that recites that the defendant was present. The trial court's order stated that September 25, 1989 (the day they were currently in court) was the first day that Newkirk's presence was made known

to the court on the record, and that the new expiration date for speedy trial purposes was December 23, 1989.

Despite defense counsel's argument that Newkirk was guilty only of theft in the first degree, the jury convicted Newkirk of robbery in the second degree. He was sentenced within the standard range to 8 months of confinement. This appeal timely followed.

## SPEEDY TRIAL

Trial of this case commenced on December 20, 1989. The issue is whether the trial commenced within the time limits of CrR 3.3(d)(2).[2]

The language critical to the issue here is "the date upon which the defendant is present in the county . . . and the defendant's presence has been made known to the court on the record". The meaning of "made known to the court on the record" has been discussed in two Washington appellate cases. *State v. Day*, 46 Wn. App. 882, 734 P.2d 491 (1987) involved very similar language in JuCR 7.8(b). The *Day* court solved the problem by holding that knowledge of a detective was imputed to the court. *State v. Johnson*, 56 Wn. App. 333, 783 P.2d 623 (1989) declined to follow that reasoning because it was not supported by legal authority, and the ruling was not supported by persuasive reasoning.

In *Johnson*, the issue was whether the filing in the clerk's office of a return on a bench warrant reflecting Johnson's arrest was adequate to show that Johnson's presence was thereby made known to the court on the record. The *Johnson* court said it was not because the rule requires that the trial judge "actually know when the defendant is available".

---

[2]CrR 3.3(d)(2) states as follows:

*"Failure To Appear.* When a defendant who has already been arraigned fails to appear for any trial or pretrial proceeding at which the defendant's presence is required pursuant to rule 3.4, the defendant shall be brought to trial not later than 60 days after the date upon which the defendant is present in the county where the criminal charge is pending and the defendant's presence has been made known to the court on the record, if the defendant is thereafter detained in jail or not later than 90 days after such date if the defendant is not detained in jail whether or not the defendant is thereafter subjected to conditions of release."

*Johnson*, at 337. *Johnson* is distinguishable from the case now before us because the only possible notice to the court in *Johnson* was the filing in the clerk's office of the return on the bench warrant.

In this case, Newkirk failed to appear for trial on May 4, 1989. However, his counsel appeared before the court the next day, May 5, and explained that Newkirk's failure to appear was due to his car breaking down and that he did call the court on May 4 in an effort to explain what had happened. Counsel requested that the bench warrant be stricken and then stated, "I guess I should step back in the office and get a new trial date." The judge made no comment other than, "Hand it up. I'll sign it."

The action of the court in quashing the bench warrant is significant here because it is the strongest possible indication that the court was satisfied that the defendant was present and ready to proceed. While counsel did not advise the court on the record expressly that Newkirk was present and ready to proceed, her statement that she would get a new trial date clearly implies that the defendant was present and ready to proceed.

A preferable method of placing the fact of the defendant's presence in the county on the record is for counsel or the defendant to announce that fact to the court under circumstances where it is recorded by a court reporter or by the clerk in the minutes. However, under the circumstances of this case, we believe the purpose of the rule was served when the motion to quash the bench warrant was made in open court and an order quashing the warrant was signed by a judge and placed in the file. It is implicit from such circumstances that the judge was satisfied the defendant was present and ready to proceed. Otherwise, there is no explanation as to why the court would quash the warrant.

We hold that the 90 days available under the speedy trial rule pursuant to CrR 3.3(d)(2) started to run on May 5, 1989, and that the 90 days had expired long before the trial was commenced on December 20, 1989.

CrR 3.3(i) requires that a charge not brought to trial within the time limits provided by the rule shall be dismissed with prejudice. Accordingly, Newkirk's conviction for second degree robbery is hereby reversed and dismissed.

The remainder of this opinion, having no precedential value, will not be published.

BAKER, J. — I concur. The basis for my concurrence on the speedy trial issue differs somewhat from Judge Scholfield's opinion, which fails to take note of *State v. Hackett*, 64 Wn. App. 205, 822 P.2d 323 (1992).

As noted in *Hackett*, the actual physical presence of the defendant or defense counsel in court is not required by CrR 3.3(d)(2). *Hackett*, at 209. I agree, however, that the warrant quashing procedure followed in this case was sufficient to satisfy the requirements of that rule, so as to recommence the speedy trial period.

KENNEDY, J., concurs with BAKER, J.

Review granted at 119 Wn.2d 1013 (1992).